UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY BOYNTON,                              Case No. 14-13846

       Plaintiff,                           Thomas L. Ludington
v.                                            United States District Judge

S. HENDERSON-PERO                             Michael Hluchaniuk
                                              United States Magistrate Judge
       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 11)**

**I.    PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, filed his complaint on October 6, 2014. (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings on October 30, 2014. (Dkt. 7). On December 12, 2014, defendant filed a motion for summary judgment. (Dkt. 11). Plaintiff filed a response on January 29, 2015. (Dkt. 17). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II. FACTUAL BACKGROUND[1]

Boynton's dental records indicate that he was hit with a baseball bat in 1988 and has suffered left TMJ pain ever since. Dr. Booth, an oral surgeon, performed an arterioplasty and laminate graft of the left TMJ in 1989. In 1998, Dr. Booth performed a second surgery, a repositioning osteotomy of the left TMJ. And in 2005, Dr. Booth advised that there was nothing more surgically that could be done. Boynton has been on many mechanical soft and pureed diets, which were discontinued due to Boynton choosing to eat off the regular chow line. Boynton's dental records are replete with entries describing a total lack of dental hygiene, a history of gingivitis and tooth extractions, and on-going requests for pain medication. Since 2004, Boynton has received and continues to receive dental treatment from numerous healthcare professionals, including fifteen dentists, several of whom performed various oral surgeries. Since 2006, MDOC's Pain Management Committee (PMC) has recommended the use of Ultram and Tylenol for any pain associated with his TMJ pain, and Boynton has admitted that he has used hunger strikes not due to the fact that he has pain, but that he is trying to get his medications. (Dkt. 11, Ex. D).

In his complaint, Boynton alleges that Dr. Henderson-Pero failed to provide

---

[1] This factual summary is largely taken from defendant's brief in support of her motion for summary judgment and supporting medical records and affidavit. (Dkt. 11-6, Dkt. 12). The facts regarding plaintiff's treatment history do not appear to be dispute.

appropriate medical care to treat his TMJ disorder. Dr. Henderson-Pero denies as untrue this allegation and provides the following summary of the treatment she provided:

    a.    Dr. Henderson-Pero's earliest contact with Boynton was when she conducted a focused examination to check his TMJ disorder on October 8, 2013. During that examination, Boynton informed her that his oral surgeon, Dr. Sorrow wanted to know whether his current medications were effective. Dr. Henderson-Pero emailed Dr. Sorrow the results of her examination that day.

    b.    On October 15, 2013, Dr. Henderson-Pero consulted with Dr. Sorrow via email. Dr. Sorrow indicated that he would like to have Boynton's Flexeril and Ultram medications and mechanical soft diet extended for two more weeks. The medications were approved and dispensed that day and on the following day, a medical detail was issued for the continuation of the mechanical soft diet.

    c.    On October 21, 2013, Dr. Henderson-Pero again consulted with Dr. Sorrow via email. Dr. Sorrow indicated that post-surgery, he would like to have Boynton's Ultram medication stopped; continue the Flexeril; diet changed to a puree for one week; 800 mg of Motrin and Vicodin.

d.  On October 22, 2013, after his off-site return for oral surgery, Boynton informed Dr. Henderson-Pero that he was experiencing post-operative pain. Dr. Henderson-Pero instructed the nursing staff to dispense Boynton's pain medication.

e.  On October 30, 2013, Dr. Henderson-Pero conducted a post-operative evaluation. She found no swelling or pain, and Boynton was healing as expected. Although Boynton requested Ultram pain medication for his TMJ, Dr. Henderson-Pero informed him that no new pain medications would be issued as he was still taking Flexeril and Vicodin. Dr. Henderson-Pero did inform Boynton that she would followup with his oral surgeon, Dr. Sorrow, to determine whether ny additional pain medications were necessary.

f.  On October 31, 2013, Dr. Sorrow indicated that any additional follow-up should be done at the Correctional Facility and that no further TMJ treatment can be done at this time.

g.  On November 4, 2013, Nursing informed Dr. Henderson- Pero that Boynton had refused his Flexeril medication for the last three days. When Dr. Henderson-Pero spoke with Boynton, he indicated that his TMJ pain was usually controlled by Ultram and will only take the Flexeril when Ultram doesn't work. Dr. Henderson-Pero informed

        Boynton that she would not discontinue his Flexeril, but that his prescription expires on November 7, 2013. Boynton did ask whether he should have his TMJ re-evaluated and Dr. Henderson-Pero reminded Boynton that Dr. Sorrow already indicated that there was nothing else that could be done at this time.

h.     Two days later, on November 6, 2013, Boynton complained of having TMJ pain which has affected his daily acts. Dr. Henderson-Pero informed Boynton that she would look into what could be done to manage his pain.

i.     On November 14, 2013, Dr. Henderson-Pero examined Boynton, found that he has normal range of motion, that there was no pain when she palpated the joints; that he was able to open his mouth without pain; but, that when the TMJ clicks, he would wince and states that he has pain. Dr. Henderson-Pero provided Boynton with a TMD treatment, Ibuprofen and Tylenol, and informed him that she was still working on some long term medications.

j.     On November 19, 2013, Dr. Henderson-Pero performed a focused examination to check Boynton for TMJ pain. While Boynton did complain that it hurt to eat from the regular chow hall line, he refused her suggestion that he switch to a pureed diet because "they put

       everything in the blender, not just the hard food." Dr. Henderson-Pero increased the dosage of Boynton's medication and informed him that she would reevaluate him in the upcoming days.

k.    On November 26, 2013, Dr. Henderson-Pero consulted with Health Unit Manager McCauley regarding Boynton's then current hunger strike, in which he admitted that it was an attempt to "strong arm the dentist into having surgery." Boynton was again offered a pureed diet and encouraged to drink liquids as neither of these should cause pain.

l.    On December 3, 2013, Dr. Henderson-Pero informed Boynton that another oral surgeon, Dr. Downs, had agreed to treat his TMJ pain and that she would submit the necessary paperwork. Dr. Henderson-Pero again offered Boynton a pureed diet, but he refused, stating "it tastes bad the way they do it here."

m.    On December 4, 2013, Dr. Henderson-Pero informed Boynton that he had been approved to go off-site to see Dr. Downs and again urged him to start a pureed diet so he would be strong enough to have his procedure with Dr. Downs. Boynton still refused, stating that he hated the taste.

n.    In a December 12, 2013 healthcare request, Boynton asked to have his medication changed to tramadol, but Dr. Henderson-Pero

informed him that we would have to wait for instructions from the oral surgeon. Dr. Henderson-Pero also informed Boynton that if he was experiencing pain while eating a mechanical soft diet, and in light of his repeated refusals to try a pureed diet, she could offer him a liquid diet. Boynton was instructed to contact Dr. Henderson-Pero regarding the liquid diet, but never did.

o.  On December 18, 2013, Boynton had his off-site appointment with Dr. Downs.

p.  On December 19, 2013, Dr. Henderson-Pero conducted a post-operative evaluation following Boynton's off-site visit in which he received an intra-articular injection of the left TMJ. Dr. Downs did indicate that if Boynton still complains of pain, that he is drug seeking as his pain should be gone from the injection. Dr. Downs also indicated that ibuprofen should be all Boynton needs if he complains of any pain within the next six months. Finally, Dr. Downs suggested the fabrication of upper and lower dentures in an attempt to establish proper vertical dimension of occlusion, which may help Boynton's TMJ condition.

q.  On December 19, 2013, Boynton did complain of pain and indicated that that he was only able to eat about half of a meatball sandwich due

to the pain. However, nursing reports indicate that Boynton actually ate two meatball sandwiches and noodles for dinner, as well as a breakfast tray in healthcare while awaiting his appointment. Dr. Henderson-Pero informed Boynton that she was ordering a full liquid diet, but warned him that it would be discontinued if he was observed eating off of the regular chow hall line. Boynton then requested an off-site evaluation by Dr. Booth in hopes of receiving another TMJ surgery. Dr. Henderson-Pero advised Boynton that Dr. Downs had indicated that another surgery is not an option at this time.

r. On January 21, 2014, Dr. Henderson-Pero conducted a focused exam to determine whether Boynton still needed a liquid diet. Boynton admitted that he was still eating from the regular chow hall line but would stop when he experienced pain. Dr. Henderson-Pero reminded him that per Dr. Downs, he shouldn't be experiencing any pain for at least six months from his December injection and to send in a request for an evaluation should he have pain in the future. Boynton refused Motrin at this exam.

s. At the time of this exam, Dr. Henderson-Pero also determined that the tissues surrounding Boynton's last dental extraction procedure had sufficiently healed to the point that he could now begin the process

        for the dentures suggested by Dr. Downs. Through the course of four additional appointments in March, May, June and August 2014, impressions were made and Boynton was fitted with dentures. During this time, Boynton never indicated that he was experiencing any discomfort as a result of his TMJ condition.

    t.    The last time Dr. Henderson-Pero saw Boynton for symptoms related to TMJ was on August 14, 2014. She provided him with treatment and made an off-site request for a second intra-articular injection. On August 19, 2014, Boynton was transferred to another Correctional Facility after being found guilty of possessing a weapon.

(Dkt. 11-5; Affidavit of Shary Henderson-Pero, DDS; Dkt. 12, Plaintiff's Medical Records).

## III.   ANALYSIS AND CONCLUSIONS

### A.   <u>Standard of Review</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a

9

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[2]

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A)

B.     Deliberate Indifference

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8

---

that a statement or dispute of fact be supported by materials in the record. Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself. *Id*. ("The standard for granting summary judgment remains unchanged.").

(1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834. To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837. In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40). "Basically,

12

there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

Regarding plaintiff's claim against a defendant who provided medical care, in cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. 2010) (plaintiff failed to state a claim of deliberate indifference when "he

13

specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested).

Defendant's brief assumes, for purposes of the motion for summary judgment, that plaintiff's TMJ disorder is a serious medical condition and thus primarily maintains that plaintiff has failed to satisfy the subjective component of the deliberate indifference test. That is, even if plaintiff can satisfy the objective prong of the deliberate indifference test, the second element of *Wilson* requires a showing that defendants acted with deliberate indifference, which plaintiff has not done. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-06 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the

Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference."). As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-61 (6th Cir. 1976). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The

deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298) to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

     Plaintiff claims that defendant was deliberately indifferent because she refused to refer him to an off-site specialist who could get to the root of his medical problem and fix it. According to plaintiff, defendant essentially barred his access to a physician who was capable of evaluating his need for treatment. In addition, plaintiff argues that the "total disregard" for his well-being should be sufficient to demonstrate deliberate indifference. He was seen in health care on many occasions and defendant was advised of his severe condition and pain. According to plaintiff, he received no "real" treatment. In the view of the undersigned, these facts merely present a difference of medical opinion, which does not generally fall within the scope of an Eighth Amendment claim. *See Thomas v. Coble*, 55 Fed. Appx. 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat at [Plaintiff's] pain.

16

However, this difference of opinion does not support an Eighth Amendment claim."); *see also Cuco v. Fed. Med. Center-Lexington*, 2006 WL 1635668, *33 (E.D. Ky. 2006) (The fact that the plaintiff's personal physician believed that the treatment chosen by prison medical personnel was not an effective treatment regimen does not matter. That is, even where a plaintiff's private physician recommends a course of treatment for the plaintiff's condition, a prison doctor's use of a different treatment regimen does not amount to deliberate indifference.). In the view of the undersigned, defendant exercised her professional medical judgment in determining how and when to treat plaintiff and thus, was not deliberately indifferent to plaintiff's TMJ disorder and related pain.

    D.    <u>Defendant's Remaining Defenses</u>

Defendant also moved for summary judgment on the issues of failure to exhaust, Eleventh Amendment immunity for any claim against her in her official capacity, and qualified immunity. Given the foregoing conclusions regarding the merit's of plaintiff's Eighth Amendment claim, these matters need not be addressed.

**IV.   RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 6, 2015            s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

### CERTIFICATE OF SERVICE

      I certify that on <u>August 6, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Stanley Boynton #179482, *Woodland Center Correctional Facility, 9036 E. M-36, Whitmore Lake, MI 48189 (*address pursuant to MDOC-OTIS) and at Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811 (address listed on the docket)</u>.

                                                      s/Tammy Hallwood
                                                      Case Manager
                                                      (810) 341-7887
                                                      tammy_hallwood@mied.uscourts.gov